HUYETT & SMITH MAN'F. CO. v. S. H. GRAY.

(Decided April 4, 1899).

*Purchase with Warranty—Breach—Damages.*

1. If property, purchased with warranty, is present and subject to inspection, the title passes and the warranty is collateral to the contract, and if false the purchaser's redress is an action for damages upon it.

2. If the property is not present, where it might be inspected, the warranty may be treated as a condition precedent, as well as a warranty. If it turns out not to be as warranted, the purchaser may refuse to receive it, and so notify the seller, and decline to pay for it; or if he has paid the price, or any part of it, he may recover the money paid.

3. If the article purchased is machinery the purchaser has a reasonable time to operate it, for the purpose of testing it; if when this is done, the machinery does not come up to contract, he may abandon the contract and refuse to receive and use the property. Unless he does this, and continues its possession and use, he will be deemed to have accepted it, and will be restricted to an action for damages upon breach of the warranty, or to a counterclaim if sued for the price, the measure of damages being the difference between the price paid, or agreed to be paid, and the real value of the property when received.

4. When the title is retained by the seller as security for payment, his lien is in the nature of a mortgage for the agreed price, and he is entitled to judgment for the debt, less any payment made, and the difference between the agreed price and the true value of the property when received, and he is also entitled to foreclosure, sale, and application of the proceeds of sale to the judgment.

CIVIL ACTION for recovery of a No. 80 Smith Dry Kiln Hot Blast Apparatus and machinery, tried before *Brown, J.,* at May Term, 1898, of the Superior Court of CRAVEN

County, being the same cause heretofore tried and reported in 111 N. C., 87 and 92, on appeal of both plaintiff and defendant. The contract price was $2,337, to be paid in different instalments. The sale was with warranty that the apparatus and machinery, with proper management and careful usage, would perform well, and thoroughly dry 25,000 feet of one-inch green sap pine lumber every twenty-four hours. The machinery was to be delivered at New Bern and a competent workman to be sent out to put it in running condition, the title to be retained until payment in full. Claim and delivery proceedings were taken out for the possession of the property, with damages, for detention. It was repleived and possession retained by defendant. The complaint alleged full compliance by plaintiff with his part of the contract, and failure on the part of the defendant, who had only paid $400 of the price.

The answer alleged a breach of warranty that the machinery and apparatus would not dry 25,000 feet of lumber as warranted, and by reason of breach of contract on the part of plaintiff, the defendant claimed damages to the amount of $4,464.96. The contract was in writing, dated April 11, 1888; suit commenced on January 20, 1890.

The following issues were framed and submitted by the Court:

1. Did the dry-kiln apparatus, delivered by plaintiff to defendant, come up to the specifications and requirements of the written contract. Answer, No.

2. What was the difference between the value of the said dry-kiln apparatus as delivered to defendant, and its value had it come up to contract? Answer, $2,000.

3. What amount of deterioration and damage has said dry-kiln apparatus sustained since the commencement of this action? Answer, $1,400.

The defendant withdrew all claims for special damage.

Upon considering the admissions and findings of the jury, his Honor was of opinion that the defendant should be charged with the unpaid purchase money, to-wit: $1,937, and that the plaintiff is to be charged with $2,000, as found by a jury in response to second issue, leaving a balance in favor of defendant of $63, for which sum judgment was rendered in favor of defendant, together with costs, to be taxed by the Clerk. The plaintiff excepted and appealed.

*Mr. W. D. McIver,* for plaintiff (appellant).

*Messrs. Simmons, Pou & Ward* and *O. H. Guion,* for defendant.

FURCHES, J. It seems to us that this action was brought without a very clear conception of the rights of the plaintiff, and the complaint is so defective in stating the cause of action that it would have been difficult to reach the merits of the case but for the aid received from the defendant's answer, which makes the contract between plaintiff and defendant, under which defendant purchased the property in controversy, a part of his answer.

From this contract it appears that on the 11th of April, 1888, the defendant purchased of the plaintiff a "No. 80 Smith Dry-Kiln Hot Blast Apparatus" at the price of $2,337, to be paid for in different instalments. The plaintiff warranted this machine to dry 25,000 feet of green sap pine lumber of a specified thickness in twenty-four hours. The defendant, before this machinery was shipped from plaintiff's shops in Detroit, Michigan, paid plaintiff $400 as a part of the purchase money, and failed and refused to pay anything more thereon, but continued to hold and use the kiln and apparatus. The defendant, failing and refusing to

pay plaintiff the balance of the purchase money, this action was commenced on the 11th day of April, 1891, for the possession of the property. But the defendant by his answer set up a contract between the parties, which, as we have said, gives point and vigor to plaintiff's action, and .enabled the Court to go to the merits of the controversy.

It seems that the law governing purchases with warranty and the rights of the parties, may be correctly stated as follows: That if the property purchased is present and may be inspected, the warranty is collateral to the contract and the title to the property immediately passes to the purchaser. And if the warranty is false, the purchaser's redress is an action for damages upon the warranty. But if the property is not present, where it might be inspected, the warranty may be treated as a condition precedent, as well as a warranty. And if the property purchased is not what it was warranted to be, the purchaser, upon delivery of the property, may treat the warranty as a condition precedent and refuse to receive or accept the property, and notify the party from whom he purchased; and if he has not paid for the property, he need not do so; and if he has paid the purchase money or any part of it he may recover the money so paid from the seller. The purchaser is not compelled in all cases to reject the property, at once, upon its receipt, if it is machinery, he has a reasonable time to operate the machinery for the purpose of testing it. But when this is done and it is found that the machine or the machinery does not fill the specifications of the contract and warranty, he must then abandon the contract and refuse to accept and use the property; and if he does not do this but continues the possession and use of the property, he will be deemed in law to have accepted the property, and his relief then will be an action for damages upon the breach of the warranty. 2 Benjamin on Sales, page 1147. In this case, the property not be-

ing present at New Bern, N. C., where the trade was made, the defendant might have treated the warranty as a condition precedent, and, after he tested the machine, refuse to accept or pay for the same. 2 Benjamin, *supra,* page 1153. But as he continued to hold and use the machine until he was sued for it, and then denied the plaintiff's right to it, and replevied and held the same, he must be deemed to have accepted the property and to have held and used it as his own. His only remedy, then, was one for damages for breach of warranty. This remedy he might have by a separate action, or he might have it by way of counterclaim and recoupment, as he has done in this case. But when he does this, the measure of damages is the difference between the price paid or agreed to be paid, and the real or true value of the property received.

This is the only rule by which damages may be assessed upon breach of warranty unless there are special damages pleaded, as resulting from the breach of warranty; and these must be such as might have been within the contemplation of the parties and the natural result of the breach. *Alpha Mills v. Engine Co.,* 116 N. C., 797; *Ashe v. DeRosset,* 50 N. C., 301; *Hadley v. Brafendale,* 9 Exc. Rep. (W. H. & G.), 341. But we need not pursue this line of thought further as all claim for resulting damages is expressly abandoned in this case, and had it not been, it has been held by this Court when the case was here on a former appeal that such damages were too remote and could not be sustained, 111 N. C., 93.

When the defendant retained the possession of this machine and used and claimed it as his own, he became liable to plaintiff for the purchase money, $2,337. But the plaintiff retained the naked legal title, which was a lien on the property—an equity in the nature of a mortgage, as a security for its debt. The plaintiff therefore was entitled to judg-

ment for the amount of his debt against the defendant, less
the amount he had paid, and the difference between the price
he agreed to pay and the true value of the property when
he received it. *Hobbs v. Bland,* at this term. And the plain-
tiff is also entitled to a foreclosure and sale of the "dry-kiln
and apparatus," and an application of the proceeds to the
satisfaction of his judgment, if he recovers judgment, as it
seems from the facts stated in this appeal he should do.

There was error in the rule of damages laid down by the
Judge below, in stating that defendant was entitled to re-
cover of plaintiff on his counterclaim, upon a breach of his
warranty, the difference between the value of a "dry kiln"
that would dry 25,000 feet of green sap pine lumber in
twenty-four hours and the price he was to pay for the "dry-
kiln" sued for.

This error led to an erroneous finding and judgment, in
which the jury found that the defendant had sustained
$2,000 damages in the purchase of a "dry-kiln" for which
he agreed to pay $2,337, and which is admitted by the an-
swer and found by the jury to have been worth $1,500 when
it was received by defendant. In fact, it seems that the case
was tried without any true conception of the real matters at
issue between the parties.

There were some exceptions as to evidence in giving the
declarations of Cunliffe, which should have been sustained,
as they do not seem to have been a part of the *res gestae,* and
therefore only what is called hear-say evidence. But as these
objections will not likely be presented on a new trial, we do
not discuss them further.

New trial.